IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

TYRONE JAMISON                                                                                    PLAINTIFF

VS.                                                         CIVIL ACTION NO. 4:10cv119-CWR-FKB

MICHAEL J. ASTRUE, COMMISSIONER                                                  DEFENDANT
SOCIAL SECURITY ADMINISTRATION
_____

REPORT AND RECOMMENDATION OF
UNITED STATES MAGISTRATE JUDGE

This cause is before the undersigned United States Magistrate Judge for a Report and Recommendation regarding the appeal by Tyrone Jamison of the Commissioner of Social Security's final decision denying Jamison's application for a period of disability, Disability Insurance Benefits (DIB), and Supplemental Security Income (SSI). In rendering this recommendation regarding Jamison's appeal, the Court has carefully reviewed the administrative record regarding Jamison's claims (including the administrative decision, the medical records and a transcript of the hearing before the Administrative Law Judge ("ALJ")); the plaintiff's Brief in Support of Complaint, the defendant's Motion to Affirm the Decision of the Commissioner and accompanying brief, and the plaintiff's Reply Brief. For the reasons discussed in this Report and Recommendation, the undersigned recommends that the Defendant's Motion to Affirm the Decision (Docket No. 16) be granted.

I. FACTS

A. Procedural History

Jamison was born on December 11, 1963, and was forty-four years of age at the time of his amended alleged onset date, March 10, 2007. (R. 26). He applied for a period of disability

DIB, and SSI on August 13, 2007.[1]  Plaintiff alleged disability because of back, knees, left shoulder and left hand problems, psychosis, gout, and a thyroid problem.  (R. 31, 140, 147, 165, 176).  His past relevant work is a carpenter, (R. 35, 131, 140-145, 177), and he completed the tenth grade.  (R. 27, 137, 183).  Plaintiff's applications were denied initially and upon reconsideration.  He requested an administrative hearing, which was held on May 12, 2009.  Thereafter, the ALJ issued a decision finding that the plaintiff was not disabled at any time from March 10, 2007, the amended alleged onset date, through the date of his decision, July 29, 2009.  According to plaintiff's request for review of hearing decision, he alleges he is unable to work because of a "severe mental condition, left shoulder rotator cuff tear, back disorder, obesity," and a treating physician's opinion that he is "not employable."  (R. 5). The Appeals Council denied plaintiff's request for review of the ALJ's decision on May 14, 2010.  Plaintiff timely filed the action before this court, briefing is complete, and now this matter is ripe for review.

## B.  Hearing Decision

In his decision, the ALJ found that although the plaintiff has the severe impairments of obesity, left shoulder rotator cuff tear, back disorder, paranoid schizophrenia, personality disorder, and borderline intellectual functioning, Jamison did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1525, 404.1526, 416.925, and 416.926). With regard to the plaintiff's alleged physical impairments, the ALJ considered the plaintiff's allegations of obesity in conjunction with his other alleged physical impairments and

---

[1] According to the government's brief, plaintiff had previously filed applications for DIB and SSI.  However, the denials of those applications were not appealed, and those applications are not currently before the Court.

the impact obesity has on his individual functioning.  The ALJ concluded that the plaintiff's physical conditions did not constitute a disability because the alleged back disorder, left shoulder rotator cuff tear, and obesity did not meet the criteria in Listings 1.02, 1.04, and 11.08.

Listing 1.02 describes major dysfunction of a joint due to any cause, resulting in an inability to ambulate or perform fine and gross movements effectively in the upper extremity. Listing 1.04 involves disorders of the spine, such as a herniated disc, in combination with other disorders, such as pain and motor loss, which is confirmed by medical evidence. Listing 11.08 describes injuries resulting from spinal cord or nerve root lesions, due to any cause with disorganization of motor function in two extremities, "resulting in sustained disturbance of gross and dexterous movements, or gait and station."  Listing 11.08 (with internal reference to Listing 11.04).

The ALJ analyzed the Plaintiff's physical allegations and the medical records in the light of these Listings. The ALJ concluded that although there was radiographic evidence of a mild disc bulge at L5-S1 causing mild spinal stenosis, "the MRI failed to show nerve root compression, spinal arachnoiditis or spinal stenosis resulting in pseucoclaudification." Docket No. 8-2 at 14.  Although the plaintiff had a slight limp, he did not need an assistive device for ambulation, nor was his gait impaired.  The ALJ also concluded that treatment notes indicated mild upper extremity weakness, "but no evidence of loss of sensation, grip strength, or reflexes." Id.  Accordingly, the ALJ concluded that the plaintiff "retains the ability to ambulate effectively and to perform fine and gross manipulations effectively."  Id.

As to the plaintiff's mental impairments, the ALJ found that, when they are considered singly and in combination, they do not meet or medically equal the criteria of Listings 12.03,

12.05, and 12.08.  Listing 12.03 describes schizophrenic, paranoid, and other psychotic disorders.  In sum, the level of severity to meet this listing is satisfied when there is medical documentation of certain behaviors, such as delusions and hallucinations, coupled with two examples of marked restrictions or difficulties in social functioning.  Alternatively, the applicant could present a medically documented history of psychotic disorders of at least two years' duration that has caused more than a minimal limitation of ability to do basic work activities, along with other conditions.  Listing 12.05 sets forth the criteria for mental retardation proved by valid IQ testing.  Listing 12.08 describes certain personality disorders, proved by demonstration of certain disorders, coupled with marked restriction or difficulties in social functioning.

In analyzing the plaintiff's condition, the ALJ concluded that the plaintiff has only a moderate, not marked, restriction in activities of daily living.  The ALJ noted that the plaintiff's symptoms are controlled with medication, and that he continues to interact with society by having a girlfriend, interacting with family, attending church, reading, and watching television.  Docket. No. 8-2 at 15.  The ALJ observed that the plaintiff has had no episode of decompensation of extended duration, although he required inpatient hospitalization in August 2008 when he was noncompliant with medication. The ALJ concluded that Jamison's symptoms are controlled with medication, and that he admits he takes care of his personal needs and socializes with family and friends.  Observing that there were no valid IQ scores in the record, as well as noting the descriptions in the record of malingering by the plaintiff, the ALJ concluded that plaintiff failed to meet the criteria of Listings 12.03, 12.05, and 12.08.

Considering these criteria, the record, and the testimony of a vocational expert, the ALJ concluded that the plaintiff has the residual functional capacity to perform sedentary work as

defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a) with certain exceptions, as follows:

> he can lift/carry 20 pounds occasionally and 10 pounds frequently; stand/walk 2 hours out of an 8-hour workday and for 15 minutes at a time; and sit for 6 hours out of an 8-hour workday and for 30 minutes at a time.  He can occasionally climb stairs, but never climb ropes, ladder or scaffolds.  He can occasionally balance e [sic] and stoop, but never crouch, kneel, or crawl.  He is limited to jobs that do not require reaching overhead with the non-dominant left upper extremity.  He must avoid exposure to unprotected heights and hazardous moving machinery.  He is limited to jobs that do not demand attention to detailed or complicated job tasks or instructions and do not require close cooperation and interaction with co-workers.  He retains the ability to maintain attention and concentration for minimal 2-hour periods at a time, accept supervision on a basic level and adapt to changes in the workplace on a basic level.

Docket No. 8-2 at 16.  In reaching this conclusion, the ALJ found that the claimant's statements concerning the intensity, persistence, and limiting effects of his alleged symptoms were not credible to the extent that they are inconsistent with the RFC.  Id. at 17.  The ALJ concluded that the plaintiff's alleged disabling pain and functional limitations were not well supported by his activities of daily living.  The ALJ also noted the plaintiff's gaps in mental health treatment and non-compliance with treatment.  With great detail, the ALJ summarized the plaintiff's medical records, consultative evaluations,  and treatment for his alleged physical and mental  impairments and explained the bases for the conclusions that he reached regarding RFC.  Docket No. 8-2 at 16-21.

Considering the RFC as described above, the ALJ concluded that the plaintiff is unable to perform any past relevant work as a carpenter or as a concrete finisher, both of which are considered skilled and medium.  Moreover, the ALJ determined that the claimant, at the time of the decision, was a "younger individual age 45-49," with a limited education.  Accordingly, the ALJ employed the Medical-Vocational Rules as a framework and found that the claimant was

"not disabled," whether or not the claimant had transferable job skills. Thus, considering the plaintiff's age, education, work experience, and RFC, the ALJ determined that unskilled and sedentary jobs exist in significant numbers in the national economy, and that the plaintiff would be able to perform these jobs. Therefore, the ALJ found that the plaintiff was not disabled at any time from May 9, 2002 to the date of the decision, July 29, 2009.

## C. Medical History

The undersigned has reviewed the medical records, as well as the detailed medical record summaries as set forth in the briefs of the plaintiff and defendant, and has determined that a detailed recitation of the records is not necessary in this Report and Recommendation.

## II. STANDARD OF REVIEW

The undersigned recognizes that this Court's review is limited to an inquiry into whether there is substantial evidence to support the Commissioner's findings, Richardson v. Perales, 402 U.S. 389, 390, 401 (1971), and whether the correct legal standards were applied. 42 U.S.C. § 405(g); Falco v. Shalala, 27 F.3d 160, 163 (5th Cir. 1994); Villa v. Sullivan, 895 F.2d 1019, 1021 (5th Cir. 1990). The Fifth Circuit has defined the "substantial evidence" standard as follows:

> [s]ubstantial evidence means more than a scintilla, less than a preponderance, and is:
> such relevant evidence as a reasonable mind might accept to support a conclusion. It must do more than create a suspicion of the existence of the fact to be established, but "no substantial evidence" will be found only where there is a "conspicuous absence of credible choices" or "no contrary medical evidence."

Abshire v. Bowen, 848 F.2d 638, 640 (5th Cir. 1988 )(quoting Hames v. Heckler, 707 F.2d 162,

164 (5th Cir. 1983)(citations omitted)). In applying the substantial evidence standard, the court must carefully examine the entire record but must refrain from re-weighing the evidence or substituting its judgment for that of the Commissioner. Ripley v. Chater, 67 F.3d 552, 555 (5th Cir. 1995). Conflicts in the evidence and credibility assessments are for the Commissioner and not for the courts to resolve. Martinez v. Chater, 64 F.3d 172, 174 (5th Cir. 1995). Hence, if the Commissioner's decision is supported by the evidence, and the proper legal standards were applied, the decision is conclusive and must be upheld by this court. Paul v. Shalala, 29 F.3d 208, 210 (5th Cir. 1994), overruled on other grounds, Sims v. Apfel, 530 U.S. 103, 120 S.Ct. 2080, 147 L. Ed. 2d 80 (2000).

## III. DISCUSSION OF THE ALLEGED ERRORS
## AND APPLICABLE LAW

The Plaintiff sets forth four issues on appeal, as follows:

1. The Commissioner's decision should be reversed because the ALJ failed to give controlling weight to Mr. Jamison's treating doctors' opinion.

2. The Commissioner's decision should be reversed because the ALJ failed to find Mr. Jamison's schizophrenia meets Listing 12.03 (A)(B).

3. The Commissioner's decision should be reversed because the ALJ's RFC failed to consider the symptoms and effect of Mr. Jamison's morbid obesity in accordance with SSR 02-1p.

4. The Commissioner's decision should be reversed because the ALJ erred by failing to find Mr. Jamison's gout a severe impairment.

The Court will address each issue, in turn.

### A.  Did the ALJ err when he did not give controlling weight to Jamison's treating doctors' opinions?

The Plaintiff argues that the ALJ failed to give controlling weight to the opinions of the treating physicians, therefore the decision should be reversed.  In particular, the Plaintiff points to the opinions of two of his treating doctors, Dr. Larry Morris and Dr. Robert Hardy.  Dr. Morris treated the plaintiff at the Macon Primary Care Clinic, located in Macon, Mississippi.  Dr. Hardy is a psychiatrist and treated the plaintiff at Community Counseling Services.[2]

Included in the record is a September 3, 2008, letter from Dr. Morris, which states that

> Tyrone Jamison is mentally disabled (Schizophrenia) and also has many physical problems.  Presently the physical problems that he has are a complete tear of the supraspinatus tendon in the right shoulder joint, chronic gout, and a bulging disc at L5 to S1 causing mild spinal stenosis.  He also suffers from hypertension and hypothyroidism.  I personally do not see how this man with a mental disease and the physical problems he has could do any type of work.  There is a limit to the type of job he could perform.

Docket No. 8-9 at 18.

In addition, there are two separate entries in the record from  Dr. Hardy.  In the first entry, dated May 5, 2009, Dr. Hardy concludes a medical source statement regarding the nature and severity of an individual's mental impairment by stating that

> This patient has a long history of treatment for schizophrenia, including hospitalization.  He is still hearing voices and is subject to problems with concentration and dealing with others that make him a poor choice for employment.

---

[2]According to the record, Community Counsel Services has several Mississippi locations, as follows: Starkville, Ackerman, West Point, Columbus, Macon, Eupora, and Louisville.  Docket No. 8-9 at 30.  It is unclear at which clinic plaintiff received his treatment.

Docket No. 8-9 at 27. In a letter dated September 15, 2009, Dr. Hardy opined that when he last saw Jamison in February 2009, "he was having auditory and visual hallucinations. He is certainly in no condition that I would want him to be my employee. His reliability and capacity to concentrate on work would be constantly in doubt." Docket No. 8-9 at 30.

The plaintiff argues that Dr. Hardy's opinion is supported by James R. Lane, III, Ph.D. and Phillip Drumheller, Ph.D., both consulting psychologists. The plaintiff asserts that the ALJ gave "significant weight" to both of their opinions, that Dr. Hardy's opinion is consistent with the record as a whole, therefore the ALJ's rejection of Dr. Hardy's opinion was erroneous.

The Commissioner argues that the ALJ properly considered all of the medical evidence of record, including all of Dr. Morris's and Dr. Hardy's findings and opinions, to determine that plaintiff was capable of performing a range of sedentary work.

The Fifth Circuit has held that "ordinarily the opinions, diagnoses, and medical evidence of a treating physician who is familiar with the claimant's injuries, treatments, and responses should be accorded considerable weight in determining disability." Scott v. Heckler, 770 F.2d 482, 485 (5th Cir. 1985). However, the treating physician's opinions are far from conclusive because the ALJ has the sole responsibility for determining disability status. Greenspan v. Shalala, 38 F.3d 232, 237 (5th Cir.1994). "Accordingly, when good cause is shown, less weight, little weight, or even no weight may be given to the physician's testimony. The good cause exceptions [the court] has recognized include disregarding statements that are brief and conclusory, not supported by medically acceptable clinical laboratory diagnostic techniques, or otherwise unsupported by the evidence." Id. In other words, the ALJ "'is entitled to determine

the credibility of medical experts as well as lay witnesses and weigh their opinions accordingly.'"
Id. (quoting Scott v. Heckler, 770 F.2d at 485).

In this case, the ALJ attributed little weight to Dr. Morris's opinion because there were no objective findings to support his opinion that the plaintiff could not perform any type of work. The ALJ highlighted that Dr. Morris's treatment notes state that plaintiff's schizophrenia was well-controlled with medication. Dr. Morris did not find any evidence of loss of motion, atrophy, neurological deficit or gait impairment, despite the plaintiff's alleged obesity, spinal, and shoulder issues. Moreover, an MRI revealed only a mild disc bulge and mild spinal stenosis. Instead, the ALJ credited an examining, consultative physician, Dr. Jim Adams, who found that medications seemed to help plaintiff's medical and mental conditions, and that plaintiff could perform some work functions, albeit with some limitations. Docket No. 8-8 at 16 to 18.

As to Dr. Hardy's opinion, the ALJ explained that he gave little weight to his opinion because "the symptoms and limitations he noted are not supported by the mental health treatment notes, which show the claimant's [sic] was doing well on medication." Docket No. 8-2 at 20. Indeed, Dr. Hardy's treatment notes indicate that the patient's symptoms were being well controlled on medication. Docket No. 8-8 at 2 - 5and 100 - 101. Moreover, a consulting examining psychologist, Dr. Drumheller, commented that "most all of [Jamison's] psychotic symptoms seem to be in full remission." Docket No. 8-8 at 27. Although another consulting examining psychologist, Dr. Lane, concluded that Jamison's "prognosis for significant improvement over the next 12 months is guarded," he commented that Jamison "appeared to be malingering throughout" certain portions of the testing. Docket No. 8-8 at 47 to 48.

Accordingly, other medical opinions in the record indicate that the plaintiff's mental and physical conditions were well controlled by medication.  Thus, the ALJ met the "good cause" standard,  and he explained his reasoning for giving less weight to the opinions of the plaintiff's treating physicians.  Therefore, substantial evidence exists in the record to support the ALJ's decision.

B. Did the ALJ err when he found that Jamison's condition did not meet Listing 12.03 (A) and (B)?

Plaintiff next argues that the Commissioner's decision should be reversed because the ALJ failed to find that his schizophrenia meets Listing 12.03 (A) and (B).  The plaintiff argues that he received continuous treatment for hallucinations that resulted in a marked limitation in both his ability to maintain attention and concentration, and maintain social functioning, and that this is borne out by the record.  The Commissioner argues that the plaintiff failed to meet either prong of Listing 12.03 (A) or (B).  The government argues that the record demonstrates that the plaintiff's history of visual and auditory hallucinations were in remission, and that he was consistently found to have no psychotic impairment.

Listing 12.03, "Schizophrenic, Paranoid, and Other Psychotic Disorders," states, in relevant part, that these conditions are

> Characterized by the onset of psychotic features with deterioration from a previous level of functioning.
> The required level of severity for these disorders is met when the requirements in both A and B are satisfied . . . .
> A.  Medically documented persistence, either continuous or intermittent, of one or more of the following:

>> 1. Delusions or hallucinations; or
>
>> 2. Catatonic or other grossly disorganized behavior; or
>
>> 3. Incoherence, loosening of associations, illogical thinking, or poverty of content of speech if associated with one of the following;
>
>>> a. Blunt affect; or
>>>
>>> b. Flat affect; or
>>>
>>> c. Inappropriate affect; or
>
>> 4. Emotional withdrawal and/or isolation;
>
> AND
>
>> B. Resulting in at least two of the following:
>
>>> 1. Marked restriction of activities of daily living; or
>>>
>>> 2. Marked difficulties in maintaining social functioning; or
>>>
>>> 3. Marked difficulties in maintaining concentration, persistence, or pace; or
>>>
>>> 4. Repeated episodes of decompensation, each of extended duration[.] . . .

Listing 12.03 (A) and (B).

While the record demonstrates that plaintiff had hallucinations, his symptoms were controlled by medication. In December 2007, Dr. Drumheller commented that there "is a history of visual and auditory hallucinations which appear to be in full remission currently." Docket No. 8-8 at 26. Thus, Jamison does not meet Listing 12.03 (A).

As to Listing 12.03 (B), the examining psychologist, Dr. Drumheller, believed that Jamison was not "remarkably impaired in his ability to perform routine repetitive tasks" and that he was only "possibly mildly impaired in his ability to interact with co-workers." Id. The same psychologist believed that Jamison was only "mildly impaired in his ability to receive supervision." Id. Dr. Lane also concluded that plaintiff could perform routine and repetitive

tasks, maintain attention for four to five hours, and interact appropriately with co-workers. Docket No. 8-8 at 48. Dr. Lane remarked, however, that the plaintiff would have "difficulty accepting supervision." Id. Plaintiff's testimony also showed that he maintained social relationships, as he testified that he goes out on dates, attends church, and likes to go out to eat from time to time. Considering the foregoing evidence, the undersigned finds that substantial evidence supports the ALJ's conclusion that the plaintiff did not meet Listing 12.03(B). Accordingly, this argument does not provide a basis for reversal of the ALJ's decision.

### C.  Did the ALJ's RFC fail to consider the symptoms and effect of Jamison's alleged obesity in accordance with SSR 02-1p?

The plaintiff argues that the ALJ failed to consider plaintiff's morbid obesity in accordance with SSR 02-1p and 20 C.F.R. § 404.1500s when he determined the RFC. The plaintiff argues that Ruling 02-1p recognizes that obesity can cause limitations in functions, such as sitting, standing, walking, etc., and that obesity may cause individuals to have problems sustaining function over time. Furthermore, as stated in SSR 02-1p, fatigue "may affect the individual's physical and mental ability to sustain work activity." The plaintiff asserts that the ALJ, in violation of SSR 02-1p, failed to explain how he reached his conclusions on whether obesity caused any physical or mental limitations. Furthermore, the plaintiff asserts that the ALJ failed to consider musculoskeletal impairments related to obesity, in violation of 20 C.F.R. § 404.1500s.

The Commissioner responds that throughout his opinion, the ALJ considered the plaintiff's obesity at every stage of the sequential evaluation process, as well as when he assessed RFC. The Commissioner also points out that the plaintiff has not suggested how his obesity and

-13-

its accompanying limitations would change the ALJ's RFC or the outcome of this case, citing Rutherford v. Barnhard, 399 F.3d 546, 552-553 (3d Cir. 2005), for guidance on this issue.

Turning to the ALJ's opinion, the ALJ assessed the plaintiff's RFC at less than sedentary work with certain restrictions, such as allowing him to "occasionally climb stairs, but never climb ropes, ladder or scaffolds. He can occasionally balance . . . and stoop, but never crouch, kneel, or crawl." Docket No. 8-2 at 16. The ALJ also determined that the plaintiff could stand/walk 2 hours out of an 8-hour day and for 15 minutes at a time. Id. The plaintiff could also sit for 6 hours out of an 8-hour workday and for 30 minutes at a time. Id. Considering these limitations, it appears that the ALJ considered the plaintiff's obesity in the RFC's exertional limitations. A closer examination of the ALJ's decision, however, is warranted.

When one considers the ALJ's decision *in toto*, it is apparent that the plaintiff mischaracterizes the ALJ's opinion. The ALJ recognized the plaintiff's size (noted as 335 pounds and 74.5 inches in height) to be a severe impairment. Throughout his decision, the ALJ noted the plaintiff's size and the ways in which medical professionals had assessed its impact on his physical abilities. The ALJ observed in his decision that more than one medical provider commented on the effect the plaintiff's obesity had on his ability to squat, his dexterity, and his ability to ambulate. The ALJ also stated that the impact of plaintiff's obesity on his functioning must be considered, as well.

Furthermore, the plaintiff has failed to show how his obesity and its accompanying limitations would change the ALJ's RFC or the outcome of the case. Much like the plaintiff in Rutherford, a "generalized [argument] is not enough to require a remand, particularly when the

-14-

administrative record indicates clearly that the ALJ relied on the voluminous medical evidence as a basis for his findings regarding [the plaintiff's] limitations and impairments." Rutherford, 399 F.3d at 553.

Accordingly, the undersigned finds that the ALJ's decision on this issue is supported by substantial evidence, and this argument does not form the basis for reversal.

### D.  Did the ALJ err when he did not find that Jamison's gout is a severe impairment?

The plaintiff asserts that ALJ's decision should be reversed because he failed to find that Jamison's gout is a severe impairment.  The ALJ found that his gout was non-severe, based upon the examinations performed by Dr. Morris and Dr. Adams, and confirmation of these medical findings by a state agency medical consultant.  Docket No. 8-2 at 13.  The plaintiff argues that his gout causes more than a minimal effect on his ability to perform basic work activities, thus it should be considered a severe impairment. Specifically, he asserts that the gout causes pain in both knees and feet such that he is unable to heel-toe walk or place significant weight on his feet, thereby affecting his ability to perform daily activities and his ability to engage in basic work activity.

The Commissioner counters that there is evidence in the record, such as the examinations by Dr. Morris and Dr. Adams, that show that the plaintiff's gout did not appear significantly to limit his ability to perform basic activities. The Commissioner also argues that, regardless of whether the gout was found to be severe, the ALJ considered all of Jamison's impairments, both severe and non-severe, throughout the remaining steps of the sequential evaluation process. Therefore, the Commissioner argues that even if it were error not to consider the gout to be

severe, such error was harmless.

Once again, the standard of review for this court is clear. The ALJ's decision on this issue must be upheld if it is supported by substantial evidence. A review of the decision and the medical evidence shows that substantial evidence supports the ALJ's conclusion on this issue. Dr. Adams, a consulting examining doctor, mentioned that the plaintiff had been "diagnosed with gout requiring daily medication," but noted that the plaintiff could elevate on his heels and toes, and that motion of his knees was normal, with "moderate crepitus with motion" and "no ligament laxity or joint swelling." Docket No. 8-8 at 18. He also noted that "[b]oth great toes elevated with equal and normal strength." Id. He commented that the plaintiff used a cane, but "did not bear weight on the cane or depend upon the cane." Id. The ALJ also referred to records from Dr. Morris and the University of Mississippi that showed that there were some complaints of bilateral knee and toe pain, but that "physical examinations showed only mild bilateral knee crepitus with no knee instability, no neurological deficit, no gait impairment, and negative straight leg raising." Docket No. 8-2 at 13. Because there is medical evidence in the record supporting the ALJ's conclusion that the gout, while painful, is not as severe and debilitating as the plaintiff alleges, the decision must be upheld. Accordingly, this argument does not form the basis of relief.

## IV. CONCLUSION

Accordingly, the Court concludes that there is substantial evidence to support the Commissioner's decision and that no reversible errors of law were committed by the ALJ. Therefore, the undersigned recommends that the decision of the Commissioner should be

affirmed.

The parties are hereby notified that failure to file written objections to the proposed findings, conclusions, and recommendation contained within this report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. 28 U.S.C. §636; Fed. R. Civ. P. 72(b)(as amended, effective December 1, 2009); Douglass v. United Services Automobile Association, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

Respectfully submitted, this the 15th day of February, 2012.

     /s/ F. Keith Ball
UNITED STATES MAGISTRATE JUDGE